**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

                                                                       **15-CR-143-V**

        **-v-**

**MAULANA LUCAS,**

        **Defendant.**
_____

### REPORT, RECOMMENDATION, AND ORDER

        This case was referred to the undersigned by the Hon. Richard J. Arcara in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report on dispositive motions. Dkt. No. 11. The case was thereafter assigned to the Hon. Lawrence J. Vilardo. Dkt. No. 35.

        Defendant Maulana Lucas ("defendant") is charged in the Second Superseding Indictment with conspiracy to possess with intent to distribute heroin, fentanyl, and cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; possession of heroin with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 18 U.S.C. § 2; possession of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 18 U.S.C. § 2; and possession of fentanyl with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 18 U.S.C. § 2. Dkt. No. 217.

On November 17, 2017, defendant filed an omnibus motion seeking, among other things, to suppress drugs recovered from the home of his co-defendant, Shirley Grigsby, and money recovered from his rental car.  Dkt. No. 311.  At an appearance on December 7, 2017, defendant withdrew his omnibus discovery demands and I granted a request for additional briefing regarding the search of defendant's rental car.  Minute Entry for 12/7/2017; Dkt. No. 338.  For the following reasons, I RECOMMEND that the defendant's motion to suppress or for a hearing be DENIED.

## MOTION TO SUPPRESS

Defendant moves to suppress drugs seized from 98 Folger Street in Buffalo, New York — the home of co-defendant and sometime girlfriend, Shirley Grigsby — on March 23, 2015, and money recovered from his rental vehicle on March 24, 2015.  The following facts are derived from discovery submitted by the government under cover letters to defense counsel and carbon copied to this Court dated December 8, and December 15, 2017.[1]

## FACTS

On March 23, 2015, the Buffalo Police Department ("BPD") responded to a call regarding a "family dispute" between Ms. Grigsby, and her sister and brother-in-law at 98 Folger Street, a single-family residence where the three family members lived.

---

[1]   Instead of filing a memorandum, the government sent these two letters with discovery related to the search of 98 Folger Street, and defendant's rental vehicle.  The undersigned will provide these materials to Judge Vilardo for his review.

2

Felony Hearing Transcript 3/27/2015 ("Fel. Hear. Tr."), pp. 42, 69; Dkt. No. 227, p. 2.[2]  At some point after the BPD arrived at the house, a "consent to search was obtained from all parties," and officers discovered in Ms. Grigsby's bedroom three duffle bags containing what was later determined to be 22 kilograms of cocaine, eight kilograms of fentanyl, and two kilograms of heroin.  Fel. Hear. Tr., pp. 42-43, 52; Dkt. No. 227, p. 2.  The police also found a photo of defendant on the bed stand, men's slippers, some checks bearing defendant's name, as well as documents with the name of Ms. Grigsby's mother who had passed away nine years prior.  Fel. Hear. Tr., pp. 44-45, 53, 57-59, 77.  Ms. Grigsby later told police that she allowed defendant to store the bags at her residence and was paid $500 a week to do so.  Dkt. No. 227, pp. 2-3.

Based on this information, the BPD notified the Niagara Falls Police Department ("NFPD") to surveil defendant's last known address in Niagara Falls, 9234 Niemel Avenue.  Niagara Falls Police Department Incident Report ("NFPD Inc. Rep."), p. 1.  The BPD advised that they had recovered a large amount of drugs at a house to which defendant was connected.  *Id.*  At midnight, NFPD Detectives observed a grey Toyota with out of state plates turn onto Niemel Avenue, and recognized defendant as

---

[2]   This dispute allegedly arose over Ms. Grigsby's relationship with defendant and their illegal activities at 98 Folger Street.  Dkt. No. 227.  According to the government, Ms. Grigsby became romantically involved with the defendant after she met him at a halfway house.  Dkt. No. 227, p. 1.  Ms. Grigsby's sister and brother-in-law "had grown suspicious" of Ms. Grigsby and defendant "because the two were receiving packages at the house and displaying expensive purchases of electronics and clothing."  Dkt. No. 227, p. 2.  On March 23, 2015, the brother-in-law went into Ms. Grigsby's bedroom while she was at work and discovered a duffle bag filled with what appeared to be multiple kilos of cocaine.  Dkt. No. 227, p. 2.  He told his wife what he had found.  The couple was very upset because their two-year-old daughter also resided in the home.  Instead of calling the police, the couple confronted Ms. Grigsby when she returned home.  Dkt. No. 227, p. 2.  When the two sisters began screaming at each other, the brother-in-law called the BPD because he feared things would "turn physical."  Dkt. No. 227, p. 2.

the passenger. *Id.* NFPD pulled the car over, and handcuffed defendant. *Id.*, p. 2. The officers learned that the car was rented in defendant's name and that the female driver was not an authorized driver on the rental agreement. *Id.*, Enterprise Rental Agreement 3/23/2015, p. 1. The defendant would not give consent for the officers to search the vehicle. He was taken into custody, and the car was towed to the BPD Seneca Street Garage. NFPD Inc. Rep., pp. 2-3; DEA Report of Investigation 3/25/2015 ("DEA Rep."), ¶ 7. The BPD thereafter deployed a drug sniffing dog, which made a positive alert for the presence of drugs in the vehicle. DEA Rep., ¶ 7.

A Buffalo City Court Judge granted the BPD's search warrant application for the car. *Id.* During the subsequent search of the vehicle, BPD detectives recovered close to $100,000 in bundled currency from a duffle bag in the trunk. *Id.*

## ANALYSIS AND DISCUSSION

*Standing*

A defendant seeking to suppress evidence must prove by a preponderance of the evidence that he had a reasonable expectation of privacy in the place searched or the items seized. *Rakas v. Illinois,* 439 U.S. 128, 143 (1978); *United States v. Perea,* 986 F.2d 633, 639 (2d Cir. 1993); *United States v. Osorio,* 949 F.2d 38, 40 (2d Cir. 1991). To be legitimate, a movant's expectation of privacy must be both subjectively and objectively reasonable. *United States v. Fields,* 113 F.3d 313, 320 (2d Cir. 1997). That is, he must show "that he *himself* exhibited an actual subjective expectation of privacy in the area searched," and that his subjective expectation of privacy "is one that society is willing to accept as reasonable." *Id.* (citing *Smith v.*

*Maryland,* 442 U.S. 735, 740 (1979)); *Osorio,* 949 F.2d at 40.  A court evaluating standing generally considers "whether the defendant had any property or possessory interest in the place searched or the items seized."  *Id.* (citations omitted).  The burden of establishing standing to challenge a search or seizure falls squarely upon the defendant, *Rawlings v. Kentucky,* 448 U.S. 98, 104 (1980), and "is met only by sworn evidence, in the form of an affidavit or testimony, from the defendant or someone with personal knowledge."  *United States v. Montoya-Eschevarria,* 892 F. Supp. 104, 106 (S.D.N.Y. 1995) (citations omitted).

Defendant has not submitted an affidavit stating that he had an expectation of privacy in 98 Folger Street or in Ms. Grigsby's bedroom.[3]  Instead, his attorney contends that defendant "has standing to contest the seizure of the drugs based on what the officers reported."  Dkt. No. 331, p. 4.  Defendant argues generally that the government "cannot have it both ways" by stating that Lucas "lacks standing for suppression but on the other hand indicate that Lucas had personal belongings located at 98 Folger indicative of him living there."  Dkt. No. 311, p. 4.

It is well established, however, that a defendant does not have "automatic standing" to challenge the seizure of contraband that he or she is charged with possessing.  *United States v. Salvucci*, 448 U.S. 83, 85 (1980).  Rather, "defendants

---

[3]  In fact, defendant previously suggested that he had no connection to Ms. Grigsby or 98 Folger Street at the time the drugs were found and thus, had no expectation of privacy in the premises.  *See, e.g.,* Fel. Hear. Tr., pp. 76-77 (defense arguing that "Mr. Lucas is not part of the family," and "there was testimony that [Mr. Lucas' personal effects] could have been [in the home] over 10 or 15 years").

charged with crimes of possession may only claim the benefits of the exclusionary rule if their own Fourth Amendment rights have in fact been violated." *Id.*; *see also United States v. Anderson*, 772 F.3d 969, 974 (2d Cir. 2014) (recognizing that "suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence") (internal citations omitted). "Coconspirators and codefendants [of those whose Fourth Amendment rights have arguably been violated] have been accorded no special standing." *Alderman v. United States*, 394 U.S. 165, 172 (1969) (recognizing the "general rule that Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted").[4]

"A defendant's unsworn assertion of the Government's representations," like the one submitted by defendant's counsel in this case, "does not meet [his] burden" to establish standing to contest the search in question. *Montoya-Eschevarria,* 892 F. Supp. at 106; *see also United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992) (recognizing that a movant's papers must be "sufficiently definite, specific, detailed and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question") (citations omitted). As such, defendant's request for a hearing regarding the search of 98 Folger Street must be DENIED.

---

[4]  Ms. Grigsby herself has not challenged the search of her bedroom or the duffle bags.

*Search of Defendant's Rental Car*

Defendant moves to suppress the money found in his rental vehicle or in the alternative, for a hearing "as to whether or not the police had probable cause to conduct a warrantless search of his vehicle." Dkt. No. 345, p. 1. Defendant contends that a "tipster" contacted the police to report that defendant was armed and dangerous, and based on this "unreliable information," police pulled defendant over "along with the driver of a rented vehicle." Dkt. No. 345, p. 1. Having reviewed the discovery related to the search of 98 Folger and the subsequent search of the car,[5] I find that this is a gross misstatement of the circumstances under which defendant was detained and his car searched.

Rather, the discovery shows that: the BPD was called to 98 Folger Street to break up a fight between Ms. Grigsby and her sister; once inside the residence, the BPD discovered duffle bags with over 30 kilos of illegal drugs; three witnesses at that residence, including Ms. Grigsby, defendant's alleged girlfriend, advised that the duffle bags belonged to defendant; and clothing and paperwork belonging to defendant appeared to connect him to both Ms. Grigsby and 98 Folger Street. In my view, there is no question that this evidence supported probable cause for the BPD to believe that defendant was involved in drug distribution.

That the BPD called the NFPD to effectuate the arrest does not render the stop of defendant's car unlawful. "When making a probable cause determination, police

---

[5] The prosecutor identified, reproduced, and sent these materials to defense counsel so it cannot be said that he was not aware of the facts surrounding the searches.

7

officers are entitled to rely on the allegations of fellow police officers." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation marks and citations omitted).[6] "Absent significant indications to the contrary, an officer is entitled to rely on his fellow officer's determination that an arrest was lawful." *Id.* (internal quotation marks omitted); *see also United States v. Colon*, 250 F.3d 130, 135 (2d Cir. 2001) (recognizing that "[u]nder the collective or imputed knowledge doctrine, an arrest or search is permissible where the actual arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation").

      Defendant argues that the NFPD officers should have released him because the "information they had received was invalid, inaccurate, and unreliable on many levels." Dkt. No. 345, pp. 2-3. To the contrary, the accounts provided by Ms. Grigsby, her sister, and brother-in-law that defendant was involved in drug distribution were corroborated by the multiple kilos of drugs found stashed in Ms. Grigsby's bedroom along with defendant's personal effects. "The determination of probable cause does not turn on whether the fellow agent's observations were accurate, but on whether the arresting agent was reasonable in relying on those observations." *Panetta*, 460 F.3d at 395 (internal quotation marks and alterations omitted); *Bleiwas v.*

---

[6] In its December 8, 2017 letter to defense counsel, the government stated: "It is the government's position that the defendant's challenge to the basis for the traffic stop is now moot. The vehicle was stopped solely because Maulana Lucas was observed inside the vehicle and because Buffalo police had developed probable cause to arrest him." 12/8/2017 Letter.

*City of New York*, No. 15 CIV. 10046 (ER), 2017 WL 3524679, at *3 (S.D.N.Y. Aug. 15, 2017), *on reconsideration in part*, No. 15 CIV. 10046 (ER), 2018 WL 401321 (S.D.N.Y. Jan. 11, 2018).  Under the circumstances, I find that it was reasonable for the BPD to conclude that defendant was presently involved with Ms. Grigsby and asked her to secrete the drugs in her bedroom for money, as Ms. Grigsby claimed.  Even if it was not reasonable, the NFPD was justified in relying on the BPD's representation that they had recovered a copious amount of drugs at a residence to which defendant was connected.

Defendant's objection that he had not committed a vehicle and traffic violation when he was pulled over is of no import.  The BPD, and by extension the NFPD, had probable cause to arrest defendant for distributing drugs, a much more serious crime.

Finally, the search of defendant's car was not "warrantless" as defendant contends.  Rather, after defendant's arrest, the rental car was immediately impounded because the female driver was not authorized to drive it.  A judge thereafter issued a warrant to search the vehicle, including the trunk, for illegal drugs.  3/24/2015 Search Warrant.  BPD officers discovered the bundled currency in the trunk of the car during the authorized search.  As defendant raises no challenge to the warrant itself, it cannot be said that the search of the vehicle was "unlawful."  Accordingly, it is recommended that defendant's motion to suppress the money found in his rental car, or for a hearing, be denied.

## **CONCLUSION**

For the foregoing reasons, it is RECOMMENDED that defendant's motion to suppress or for a hearing (Dkt. No. 311) be DENIED in its entirety.

Therefore, it is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation, and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation, and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with Federal Rule of Criminal Procedure 59(b)(2) and Local Rule of Criminal Procedure 59(c)(2).

The parties are reminded that, pursuant to Rule 59 of the Local Rules of Criminal Procedure for the Western District of New York, "written objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection, and shall be supported by legal authority." **Failure to comply with the provisions of Local Rule 59 may result in the District Judge's refusal to consider the objection.**

The District Judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the Magistrate Judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Mass.*

*Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).  Local Rule 59(c)(3) mandates that "[a]ny party filing objections to a Magistrate Judge's order or recommended disposition must include with the objections to the District Judge a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge."

      **SO ORDERED.**

DATED:    Buffalo, New York
              January 25, 2018

                                      *s/ H. Kenneth Schroeder, Jr.*
                                      **H. KENNETH SCHROEDER, JR.**
                                      **United States Magistrate Judge**