UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    v.

MAULANA LUCAS,

    Defendant.

15-CR-143
DECISION & ORDER

---

On March 21, 2018, the defendant, Maulana Lucas, pleaded guilty to count three of the second superseding indictment charging him with conspiracy to possess with intent to distribute and conspiracy to distribute 1 kilogram or more of heroin, 5 kilograms or more of cocaine, and 400 grams or more of fentanyl, in violation of 21 U.S.C. § 846. *See* Docket Items 451 and 456.  On July 3, 2019, this Court sentenced Lucas to a term of imprisonment of 84 months, to be followed by five years of supervised release.  *See* Docket Items 1197 and 1217.  Lucas had been detained before his guilty plea, and he was scheduled to be released to a halfway house in less than two months—on June 16, 2020; according to Lucas's lawyer, however, that release was in jeopardy because of concerns related to the COVID-19 pandemic.  *See* Docket Item 1363 at ¶ 4; Docket Item 1373 at 3-4.

On April 15, 2020, Lucas brought a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.  *See* Docket Item 1363.  He argued that his continued confinement in the wake of the COVID-19 pandemic, and in light of the high risk resulting from his diabetes, poses a serious threat to his health and safety.  The government opposed

Lucas's motion on April 20, 2020.  Docket Item 1367.  In response to a sealed order issued on April 17, 2020 (Docket Item 1366), this Court received and filed under seal copies of Lucas's medical records from FCI Morgantown (Docket Item 1370).  Lucas replied on April 21, 2020. Docket Item 1373.  After hearing argument from both sides on April 22, this Court granted Lucas's motion and ordered that he be released to home incarceration within the next 24 hours.  Docket Item 1374.  The Court now writes to explain its decision.

## DISCUSSION

"[A] court may not modify a term of imprisonment once it has been imposed except pursuant to statute."  *United States v. Ogarro*, 2020 WL 1876300, at *2 (S.D.N.Y. Apr. 14, 2020) (Sullivan, *J.*) (quoting *United States v. Roberts*, 2020 WL 1700032, at *1 (S.D.N.Y. Apr. 8, 2020)).  Section 3582(c)(1)(A) provides one such statutory exception, often referred to as "compassionate release."  Under 18 U.S.C. § 3582(c)(1)(A)(i),

> [a sentencing] court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, . . . if it finds that extraordinary and

> compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

*Id.* The relevant policy statement, Guidelines section 1B1.13, in turn provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A),[1] the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1)  (A) Extraordinary and compelling reasons warrant the reduction; or
>
>   (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

*Id.* "The defendant has the burden to show he is entitled to a sentence reduction." *United States v. Ebbers*, 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020).

Accordingly, to obtain relief under section 3582(c)(1)(A)(i), Lucas must show that (1) he has met the exhaustion requirement or the requirement is otherwise excused, (2) "extraordinary and compelling reasons" warrant a reduction of his sentence, (3) he is not a danger to others or the community, and (4) a reduction is consistent with the factors set forth in section 3553(a).

---

[1] Until passage of the First Step Act, only the BOP could bring a motion for compassionate release. Section 1B1.13 consequently "is at least partly anachronistic because it has not yet been updated to reflect the new procedural innovations of the First Step Act." *United States v. Ebbers*, 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020). "[It] is, nonetheless, helpful in defining a vague standard" because "[t]he First Step Act did not revise the substantive criteria for compassionate release." *Id.*

### 1. Exhaustion Requirement

First, courts consider whether the defendant has met section 3582(c)(1)(A)'s exhaustion requirement. To do so, the defendant must show either (a) that he has "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf" or (b) that 30 days have lapsed since "the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). There is no dispute that Lucas has not fulfilled either requirement.[2] Docket Item 1363 at ¶¶ 7-10; Docket Item 1367 at 5-6.

As this Court found in *United States v. Bess*, section 3582(c)(1)(A)'s exhaustion requirement is nonjurisdictional—that is, a claim-processing rule—and therefore is subject to both forfeiture and waiver. *United States v. Bess*, No. 16-CR-156, 2020 WL1940809, at *3 (W.D.N.Y. Apr. 22, 2020). Moreover, in *Bess* this Court joined Judges Liman, Nathan, and Rakoff in concluding that a defendant's failure to exhaust may be excused as a matter of judicial discretion. *Id.* at *6. This Court found that given the unprecedented health crisis posed by the COVID-19 pandemic, the question is whether applying equitable exceptions to section 3582(c)(1)(A) would be incompatible with Congressional intent. *Id.* at *7 (internal citations omitted).

> And on that question, this Court agree[d] with Judge Rakoff that "Congress cannot have intended the 30-day waiting period . . . to rigidly apply in the highly unusual situation in which the nation finds itself today." *Haney*, 2020 WL 1821988, at *3. The statute was "designed to 'enhance public safety' and 'make[ ] . . . changes to Bureau of Prisons' policies and procedures to ensure prisoner and guard safety and

---

[2] Lucas states that he has "begun the administrative process [for compassionate release] by applying to the prison warden." Docket Item 1363 at ¶ 6. As of the date of oral argument, the Court was unaware of any action taken by the BOP on Lucas's request.

4

>    security.'"  *Scparta*, 2020 WL 1910481, at *7 (alteration in original) (quoting H.R. Rep. No. 115-699, at 22 (2018)). Neither purpose is served by keeping a vulnerable individual incarcerated in precarious conditions that pose risks to not only his own health and safety, but also to the health and safety of the prison staff and the communities to which they return each day.
>
> *Id.*

Accordingly, for the reasons articulated more fully in *Bess*, this Court again concludes that section 3582(c)(1)(A)'s exhaustion requirement is subject to equitable exceptions, including judicial excusal. Lucas's failure to exhaust his administrative remedies is excused, and the Court now addresses the merits of his motion for compassionate release.

### 2.  Extraordinary and Compelling Reasons

Under section 3582(c)(1)(A), the defendant must demonstrate that "extraordinary and compelling reasons" support his release. In connection with this requirement, Congress delegated to the United States Sentencing Commission the task of "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction." *See* 28 U.S.C. § 994(t). The commentary to U.S.S.G. § 1B1.13 includes four examples of such circumstances: "Medical Condition of the Defendant"; "Age of the Defendant"; "Family Circumstances"; and "Other Reasons". U.S.S.G. § 1B1.13 cmt. n.1.

> The medical-condition circumstance applies when:
>
> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease and advanced dementia[; or]

5

>   (ii) The defendant is—
>       (I) suffering from a serious physical or medical condition,
>       (II) suffering from a serious functional or cognitive impairment, or
>       (III) experiencing deteriorating physical or mental health because of the aging process,
>   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 cmt. n.1(A). And the other-reasons circumstance applies when "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with," medical conditions, age, or family circumstances. *Id.* § 1B1.13 cmt. n.1(D).

In compliance with this Court's order, FCI Morgantown provided this Court with Lucas's 2019 and 2020 medical records which this Court filed under seal. *See* Docket Item 1370. As well documented in the medical records, Lucas suffers from diabetes. *Id.* This Court already has "take[n] judicial notice that, for people of advanced age, with underlying health problems, or both, COVID-19 causes severe medical conditions and has increased lethality." *See Bess*, *supra*; *see also*, *Jones v. Wolf*, No. 20-CV-361, 2020 WL 1643857, at *8 (W.D.N.Y. Apr. 2, 2020) (citations omitted). Those conditions include "diabetes." *Id.* (quoting *People who are at higher risk for severe illness*, Ctrs. for Disease Control and Prevention (April 27, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.

Lucas's motion for release asserts that FCI Morgantown does not provide masks to the inmates and that the conditions there make the social distancing required to

6

minimize the risk of contracting COVID-19 nearly impossible.³  Docket Item 1363 at ¶ 17.  That is not surprising given the challenges social distancing presents in a prison or any facility with many residents.  And the spread of COVID-19 in such facilities underscores those challenges.  *See* https://www.bop.gov/coronavirus/, Apr. 29, 2020 ("As of 04/28/2020, there are **1313 federal inmates** and **335 BOP staff** who have confirmed positive test results for COVID-19 nationwide. Currently, **404** inmates and **132** staff have recovered. There have been **30** federal inmate deaths . . . attributed to COVID-19 disease."); *United States v. Scparta*, No. 18-CR-578 (AJN), 2020 WL 1910481, at *9 (S.D.N.Y. Apr. 20, 2020) (stating "the COVID-19 pandemic presents an extraordinary and unprecedented threat to incarcerated individuals"); *FAQs for correctional and detention facilities*, Ctrs. For Disease Control and Prevention, (Apr. 29, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/faq.html#People ("People in correctional and detention facilities are at greater risk for some illnesses, such as COVID-19, because of close living arrangements with other people.").  In short, the grave risks that COVID-19 poses to individuals with the defendant's medical condition, combined with the increased risk of contracting the disease in a prison, constitute "extraordinary and compelling reasons for sentence reduction."  *See* 18 U.S.C. § 3582(c)(1)(A).

---

³ For example, although Lucas has his own cell, he must share bathroom facilities and eat meals with other inmates on a daily basis.  Docket Item 1363 at ¶¶ 13 and 17.

7

### 3. Dangerousness

Third, courts consider whether the defendant is "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Neither of Lucas's federal criminal convictions involved violence, and his prior transition to supervised release was listed as satisfactory in his most recent presentence investigation report. Moreover, while selling drugs indeed poses a danger to society, the risk of that danger must be weighed in light of the additional time that release of a defendant might add to it. In this regard, before Lucas even filed his motion for immediate compassionate release, the BOP had approved him for transfer to a halfway house on June 16, 2020, and to begin his five-year term of supervised release on March 10, 2021. Docket Item 1363 at ¶¶ 4 and 11. So any risk of additional danger is minimal—only that posed by an additional few months of release. And that risk can be ameliorated by modifying Lucas's terms of his supervised release—that is, by putting him on home incarceration until June 16, 2020, when he would be released to a halfway house, and home detention until March 10, 2021, when he would be released to begin his supervised release.

### 4. Section 3553(a) Factors

Finally, courts "consider[ ] the factors set forth in section 3553(a)." 18 U.S.C. § 3582(c)(1)(A). Those factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and

8

>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
>  . . .
>
> (4) the kinds of sentence and the sentencing range established [under the applicable Guidelines sections]
>
>  . . . [and]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

18 U.S.C. § 3553(a).

"[I]n deciding motions for compassionate release, the Court should be wary of using the motion to 'correct' the sentencing court's original judgment or introduce unprincipled variance into the execution of duly-imposed sentences, while still honoring Congress's stated intent of increasing the availability of compassionate release." *Ebbers*, 2020 WL 91399, at *7. For that reason, "in considering the section 3553(a) factors, it should assess whether those factors outweigh the 'extraordinary and compelling reasons' warranting compassionate release, particularly whether compassionate release would undermine the goals of the original sentence." *Id.*

Here, the defendant has served a substantial portion of his 84-month sentence and was two months away from being transferred to a halfway house. So the question is this: whether two additional months of incarceration and the incremental value of those two months toward serving the section 3553(a) interests of providing a fair punishment, deterring the defendant and others, protecting the public, and promoting respect for the law justify forcing someone at risk of death or serious complications from

9

COVID-19 to remain for two additional months in a facility where his exposure to the virus will be heightened.  In this Court's view, that question is not difficult to answer.

In sum, the fact that the defendant has served all but a few months of his projected incarceration under the sentence the Court imposed, coupled with the serious threat to his health and safety posed by his continued confinement in the wake of the COVID-19 pandemic, warrants compassionate release.  This conclusion is further supported by the fact the Court releases Lucas not on his own recognizance, but instead to home incarceration for two months, and then to home detention for the remainder of his sentence of imprisonment, to be followed by the balance of his 5-year term of supervised release.  In other words, Lucas will still be required to serve the remainder of his sentence of imprisonment, albeit in a different setting that is more likely to protect his health and safety.  This Court therefore is not using the statute to "correct" its original judgment.  *See Ebbers*, 2020 WL 91399, at *7.  Indeed, the Court has no reason to believe that its original judgment needs correcting.

**CONCLUSION**

For the reasons set forth above, the Court finds that Lucas has demonstrated an extraordinary and compelling reason under 18 U.S.C. § 3582(c)(1)(A) to warrant his immediate compassionate release from BOP custody. Therefore, Lucas's motion for release, Docket Item 1363, is GRANTED.

**ORDER**

IT THEREFORE IS HEREBY

ORDERED that the defendant's emergency motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), Docket Item 1363, is **GRANTED**; and it is further

ORDERED that the defendant's sentence is reduced to **time served** and the **BOP shall release the defendant within 24 hours**; and it is further

ORDERED that the defendant's term of supervised release shall commence immediately upon his release from incarceration, subject to the terms and conditions set forth in the judgment, Docket Item 1217, except that, **beginning 14 days after his release and through June 16, 2020**, the defendant shall comply with the conditions of the Location Monitoring Program (**home incarceration** component), wear an electronic monitor, follow the monitoring procedures outlined in Probation Form 61, and contribute to the cost of services rendered (co-payment); and during the defendant's term of supervised release from **June 16, 2020, to March 10, 2021**, the defendant shall comply with the conditions of the Location Monitoring Program (**home detention** component), wear an electronic monitor, follow the monitoring procedures outlined in Probation Form 61, and contribute to the cost of services rendered (co-payment); and it is further

ORDERED that the defendant shall contact the United States Probation Office, Western District of New York, at 716-362-5226, within 24 hours of his release; and it is further

ORDERED that following his release, the defendant must travel directly to 68 Grant St., Lockport, NY, and may not make any stops other than are necessary for fueling, food or restroom facilities on his return home; and it is further

ORDERED that, upon returning to his residence, the defendant must self-quarantine for 14 days.


SO ORDERED.

Dated:  April 29, 2020
         Buffalo, New York

       *s/ Lawrence J. Vilardo*
       LAWRENCE J. VILARDO
       UNITED STATES DISTRICT JUDGE